**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Robert Cobler,<br><br>Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV-19-00348-TUC-RM (P)<br><br>**ORDER** |

On July 10, 2019, Plaintiff James Robert Cobler, who is confined in the United States Penitentiary-Tucson, filed a pro se civil rights Complaint pursuant to the Federal Tort Claims Act ("FTCA") (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 2). In an October 16, 2019 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. (Doc. 7.) The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order. (*Id*.)

On October 28, 2019, Plaintiff filed a First Amended Complaint. (Doc. 9.) The Court will order the United States to answer the First Amended Complaint.

**I.  Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon

which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**II.  Discussion of First Amended Complaint**

In his two-count First Amended Complaint, Plaintiff asserts claims of negligence and medical negligence under the FTCA against Defendant United States. Plaintiff seeks monetary relief.

In Count One, Plaintiff alleges the following:

On November 12, 2017, at about 5:00 a.m., Plaintiff woke up because he had

severe stomach pain. Plaintiff felt like he was going to vomit, so he got out of bed and went to the toilet, where he vomited blood within seconds. Within less than one minute, Plaintiff vomited another two to three cups of dark brown blood that looked like coffee grounds. He felt extreme burning pain each time he vomited. Plaintiff began to feel dizzy and weak, knelt in front of the toilet, and called out to his cellmate, Whitehead, for help. Whitehead got out of bed, immediately went to Plaintiff's side, and put his arm around Plaintiff to prevent him from falling over. Whitehead told Plaintiff that he was going to push the emergency alarm button to get help for Plaintiff.

Correctional Officer B. Estillore and another unidentified officer came to Plaintiff's cell. Whitehead showed both officers the bloody vomit and told them that Plaintiff had been vomiting blood. Plaintiff and Whitehead asked Estillore to get medical help for Plaintiff. Estillore said he would call the Lieutenant "right away." After about ten minutes, Plaintiff again vomited blood and told Whitehead he thought he was going to die. Plaintiff continued to feel the burning pain when he vomited, and Whitehead pushed the emergency alarm button again. Estillore and the other officer came back to Plaintiff's room, and Estillore told him that he had called Lieutenant Doe and told him Plaintiff was vomiting blood, but Lieutenant Doe had told Estillore to tell Plaintiff there was nothing Lieutenant Doe could do for him because there were no medical staff in the prison at that time. Lieutenant Doe told Estillore that Plaintiff would have to wait until medical staff arrived before he could receive medical care.

Lieutenant Doe did not contact the on-duty physician and inform him or her that Plaintiff was vomiting blood and reporting severe, burning pain, nor did Doe exercise his authority to send Plaintiff during non-duty hours for an emergency, outpatient, escorted offsite visit. Plaintiff claims Lieutenant Doe's actions and inaction caused Plaintiff to be subjected to additional physical harm to his esophagus and to endure prolonged pain and suffering.

In Count Two, Plaintiff alleges the following:

At about 6:00 a.m. on November 12, 2017, Officer Estillore opened Plaintiff's cell

and sent him to the medical department. Whitehead helped Plaintiff get to the medical department, and when they arrived, Plaintiff met Nurse Brian W. Schuler. Plaintiff told Nurse Schuler he had vomited a lot of blood five or six times since about 5:00 a.m. that morning and that his stomach was "on fire" and extremely painful. Nurse Schuler told Plaintiff that he had to go to work at the pill line to pass out medications at that time and did not have time to do anything else. Nurse Schuler gave Plaintiff a small pill cup and told him to vomit in the cup if he had to. Nurse Schuler locked Plaintiff in the waiting room alone and left.

Plaintiff sat alone in the waiting room for almost two hours. He felt the pain increasing, went into the restroom, and vomited blood again. Plaintiff managed to get some of the blood into the cup. Plaintiff was scared he was going to die from bleeding and started banging and kicking the door, but he was too weak to bang or kick very loudly, and no one came. Plaintiff tried to lie down on the bench, but the pain was too great to let him rest. Nurse Schuler returned, and Plaintiff told Schuler that he had vomited more blood in the bathroom and showed him the blood in the cup. Nurse Schuler did not go into the bathroom to see the blood in the toilet. Plaintiff told Schuler that he felt "really bad" and was in a lot of pain, and the pain was much worse than it was when he first started vomiting.

Plaintiff also told Nurse Schuler he suffered from advanced liver disease with cirrhosis and esophageal varices, which was documented in his medical records. Nurse Schuler did not conduct any hands-on physical examination, take Plaintiff's blood pressure, determine his blood count, check his heart rate, attempt to identify the underlying cause of Plaintiff vomiting blood, take his temperature, contact the on-duty physician, or exercise his authority to immediately send Plaintiff to an outside medical facility for emergency treatment. Instead, Nurse Schuler told Plaintiff he just had "an upset stomach," that he would "be okay," and to go back to his cell and "sleep it off," then go to sick call the next day. Nurse Schuler gave Plaintiff one 25 milligram promethazine suppository and told Plaintiff to come back to the pill line that evening and

get another one. Nurse Schuler told Plaintiff that the medicine would help him "get over his upset stomach," but he did not tell Plaintiff that promethazine only helps control symptoms and would not treat the cause of the symptoms or speed Plaintiff's recovery.

Plaintiff returned to his cell at about 8:15 a.m. and tried to go back to sleep, but the pain continued to prevent him from resting. At about 9:30 a.m., Plaintiff felt "several very sharp stabbing pains" in his chest and stomach and felt nauseated. Thinking he just needed to have a bowel movement, Plaintiff got out of bed, went over to the toilet, and started to sit down, but as soon as he sat down, he began to retch and vomit blood again. Plaintiff turned around to face the toilet and vomited a large amount of blood, which went not only into the toilet, but also onto the floor, wall, and sink, splattered his locker three feet from where he was standing, and got onto his clothes that were hanging on wall hooks a couple of feet from the toilet.

Whitehead pressed the emergency alarm button and yelled loudly for help to Officer Conroy, who was at the other end of the unit. Officer Conroy went immediately to Plaintiff's cell, looked at all the blood, and "without hesitation" called over his radio that there was a medical emergency. Within five minutes, several staff members arrived, including Nurse Schuler. They put Plaintiff into a wheelchair and took him to Health Services. About an hour later, prison transport officers took Plaintiff to Tucson Medical Center ("TMC"). TMC physicians determined that Plaintiff was experiencing esophageal hemorrhaging and vomiting blood. TMC surgeons performed an esophageal gastroscopy duodenoscopy with variceal esophageal band ligation. Plaintiff stayed at TMC for follow-up care and was discharged on November 25, 2017.

Plaintiff alleges that Nurse Schuler's actions and inaction forced Plaintiff to endure a second episode of excruciatingly painful vomiting of blood, exacerbating damage to his esophagus, and unnecessarily prolonging needed emergency medical treatment.

Plaintiff alleges that Lieutenant Doe and Nurse Schuler were employees of the United States and their acts and omissions described in the First Amended Complaint

amount to negligence and medical negligence, respectively, under Arizona Law. Thus, Plaintiff contends, the United States is liable for Lieutenant Doe and Nurse Schuler's acts under the FTCA. Plaintiff includes with the First Amended Complaint copies of a November 8, 2018 letter acknowledging receipt of Plaintiff's Claim for Injury under the FTCA and a June 21, 2019 letter denying the claim. (Doc. 9 at 7-8.)

Liberally construed, Plaintiff has stated claims under the FTCA. The Court will require the United States to answer the First Amended Complaint.

**III. Warnings**

**A. Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

**B. Address Changes**

If Plaintiff's address changes, Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C. Copies**

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

. . . .

. . . .

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Defendant United States of America must answer the First Amended Complaint (Doc. 9).

(2) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 9), this Order, and summons forms for Defendant United States.

(3) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(4) If Plaintiff does not complete service of the Summons and First Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(5) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(6) Upon receipt of the service packet, the Clerk of Court must send by certified mail copies of the First Amended Complaint and this Order to (1) the civil process clerk at the office of the United States Attorney for the District of Arizona and (2) the Attorney General of the United States, pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure.

. . . .

. . . .

. . . .

(7) Defendant United States must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

Dated this 7th day of November, 2019.

_____
Honorable Rosemary Márquez
United States District Judge